# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**CHARLES SMITH,**

       **Plaintiff,**                     **CIVIL ACTION NO. 10-CV-12955**

   vs.                               **DISTRICT JUDGE VICTORIA A. ROBERTS**

                                   **MAGISTRATE JUDGE MONA K. MAJZOUB**

**Wayne DeVerney, Kris Naffziger, Jill Brown, Ruth Hall, Travis Gager, Rhonda Martinez, and Debra Evans,**

       **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Smith, a Michigan state prisoner, brings this *pro se*[1] action under 42 U.S.C. § 1983, alleging that Defendants Wayne DeVerney, Kris Naffziger, Jill Brown, Ruth Hall, Travis Gager, Rhonda Martinez, and Debra Evans, employees of the St. Louis Correctional Facility ("SLF") mail room, opened various pieces of legal mail addressed to Plaintiff. (Docket no. 23.) Before the Court is Defendants' Motion for Summary Judgment. (Docket no. 83.) Plaintiff filed a Response to the Motion.[2] (Docket no. 85.) All pretrial matters have been referred to the

---

[1] Plaintiff was represented by counsel from November 30, 2010, the day on which Plaintiff filed his Amended Complaint (docket no. 23), through February 10, 2012. (*See* docket no. 53.)

[2] Included with Plaintiff's Response to Defendants' Motion is a renewed Motion to Compel Defendants to produce various time cards from the SLF mail room for the dates on which Plaintiff's legal mail was allegedly open. (*See* docket no. 85 at 26-27.) The Court has previously addressed this issue in depth. (*See* docket nos. 74 and 80.) On November 14, 2012, the Court ordered Defendants to produce the time cards for inspection. (Docket no. 74.) Defendant did produce the time cards for Plaintiff's inspection but did not provide Plaintiff with copies of the same. Plaintiff filed a Motion to Compel such copies arguing that he would need the copies to respond to Defendants' impending Motion for Summary Judgment. (Docket no.

undersigned for consideration. (Docket no. 56.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.

## I.  Recommendation

For the reasons that follow, the Court recommends GRANTING Defendants' Motion for Summary Judgment [83]. The Court, therefore, recommends dismissing this matter in its entirety and denying Plaintiff's Motion to Compel, which was included with his Response to Defendants' Motion (*see* docket no. 85 at 26-27) as moot.

## II.  Report

### A.  Facts

Plaintiff alleges that on or about September 25, 2008, he issued a written request to be present during the opening of his legal mail in accordance with Michigan Department of Corrections ("MDOC") policy. (Docket no. 23 ¶ 15.) On August 3, 2009, Plaintiff received a FedEx package from "Joseph Kosinski, DRAZH & ASSOCIATES, PLLC." (*See* docket no. 85 at 43.) The package was delivered through the SLF warehouse and was signed for by Defendant Gager, who then opened the package. (*See* docket no. 85 at 45.) A "special handling" log acknowledges that the package was "opened in error." (Docket no. 85 at 44.) Defendant Gager testified during his deposition that he doesn't remember opening the package, but even if he had seen the package, he would have opened it because there was "nothing [on the package] indicating that it would be legal mail." (Docket no. 83-5 at 6.) On September 8, 2009, Plaintiff received a letter from "Law Offices of Larry

---

78.) The Court denied Plaintiff's Motion under the auspices of Fed. R. Civ. P. 34, but acknowledging that the information may be necessary to support Plaintiff's factual assertions, the Court granted Plaintiff permission to re-file a request for copies of the time cards concurrently with his response to Defendants' Motion for Summary Judgment. (Docket no 80.) The Court will recommend denying Plaintiff's Motion to Compel herein because the Court finds that the information allegedly contained in the time cards is not necessary for a determination of the instant Motion.

A. Smith," which was processed through the SLF mail room. (*See* docket no. 85 at 32.) And on December 18, 2009, Plaintiff received a letter from "Josech T. Barberi, P.C., Attorneys & Counselors at Law," which was also processed through the SLF mail room. (*See* docket no. 85 at 33.) Plaintiff alleges that each of these letters was opened outside of Plaintiff's presence.

Plaintiff filed grievances for each of these alleged violations, and on February 13, 2010, Plaintiff met with Defendant DeVerney, the SLF Facility Manager, regarding the December 18, 2009 mail. (*See* docket no. 83 at 18.) Another inmate, Ronald King, provided an affidavit stating that he was also in attendance during Plaintiff's meeting with Defendant DeVerney because Mr. King had complaints about his mail being opened as well. (Docket no. 85-1 at 4.) According to Plaintiff and Mr. King, Defendant DeVerney stated that only mail from a criminal attorney is considered "legal mail;" mail from a civil attorney is not considered "legal mail." (Docket no. 85 at 30-31; docket no. 85-1 at 4.)

On or about June 16, 2010, Plaintiff received a letter from "Wendy Barnwell, Attorney-At-Law." (Docket no. 85 at 34.) Plaintiff was called to receive "general mail," at which time he found that the letter from Attorney Barnwell had been opened.

Plaintiff alleges that Defendant DeVerney encouraged the mail room employees to open legal mail because it was not protected if it was in relation to a civil matter. (*See* docket no. 85 at 13, 16.) At the very least, Plaintiff asserts, Defendant DeVerney "implicitly authorized, approved, and knowingly acquiesced" in the opening of Plaintiff's legal mail. (*Id.* at 14, 16.) Plaintiff alleges that Defendants Martinez and Naffziger were the only SLF mail room employees working on September 8, 2009, and December 21, 2009, and therefore, they are responsible for opening his mail on those dates. (*Id.* at 18-21.) And he alleges that Defendants Evans and Hall were the only SLF mail room employees present when his mail was opened on June 16, 2010. (*Id.* at 22-23.) Plaintiff appears to

allege that Defendant Brown is a "back-up" employee in the SLF mail room and that she was also present on June 6, 2010. (*Id.* at 23.) Plaintiff's claims, however, are not individualized in his Complaint. (*Compare* docket no. 23, *with* docket no. 85.) Plaintiff seeks (1) Declaratory relief acknowledging that Plaintiff's Constitutional rights were violated, (2) prospective injunctive relief against Defendants seeking an order that Defendants act in a manner consistent with Plaintiff's Constitutional rights, (3) "compensatory and punitive damages," and (4) reasonable fees and costs. (Docket no. 23 at 8-9.)

      **B.**      **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

    (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.**    **Analysis**

Plaintiff originally brought his claims against the instant Defendants and SLF employees Nick Ludwick, Steve Rivard, and Scott Smith. (*See* docket no. 23.) On July 7, 2011, the Court entered a Report and Recommendation wherein the undersigned recommended (1) dismissing all of Plaintiff's claims against Defendants Ludwick, Rivard, and Smith; and (2) dismissing Plaintiff's official capacity claims for monetary damages against Defendants Gager, Brown, Hall, and Naffziger.[3] (Docket no. 43.) The Court adopted the undersigned's Recommendation. (Docket no. 45.) Thus, this Report and Recommendation addresses Plaintiff's remaining claims.

        **1.**    **Plaintiff's official-capacity claims against Defendants Evans and Martinez**

---

[3] At the time, Defendants Evans and Martinez were listed as "John Doe" Defendants; thus, the Court did not address Plaintiff's claims against Defendants Evans and Martinez.

As noted, Defendants Evans and Martinez were not named Defendants at the time the Court decided Defendants' previous Motion to Dismiss. Therein, the Court found that Plaintiff's official-capacity claims for monetary damages against the other Defendants were barred by the Eleventh Amendment. (Docket no. 43 at 6-7.) For the same reason, if the Court does not adopt the remainder of this Report and Recommendation, the undersigned recommends dismissing Plaintiff's official-capacity claims for monetary damages against Defendants Evans and Martinez.

### 2. Plaintiff's claims against Defendant Gager

Although Plaintiff's Amended Complaint makes general allegations against all Defendants inclusively, Plaintiff's Response to Defendants' Motion makes it clear that his claims against Defendant Gager arise out of the allegedly unconstitutional opening of the FedEx package that he received on August 18, 2009. (*See* docket no. 85.) Thus, to the extent that the claims in Plaintiff's Amended Complaint against Defendant Gager arise out of any act related to the legal mail that he received on September 8, 2009, December 21, 2009, or June 16, 2010, these claims should dismissed regardless of whether the Court adopts the remainder of this Report and Recommendation.

With regard to the August 18, 2009 FedEx package, Defendants acknowledge that Defendant Gager opened the package and that it contained legal mail. (*See* docket no. 83 at 20-21.) Defendants argue, however, that the package was not clearly marked as legal mail and, therefore, Defendant Gager's actions cannot amount to a constitutional violation because he "had no way of knowing the package even contained legal mail until after it had been opened and the contents checked." (*Id.* at 20.)

Defendant Gager testified that when a package is received by the in the SLF warehouse, he first checks to see if it is property or mail and then checks to see if it is legal mail. (Docket no. 83-5 at 4.) To determine if the package is "legal mail," he looks to see "[i]f it says legal mail or if it has

an attorney emblem on it or logo [or if it says] attorney at law . . . or if it says confidential, attorney-client material." (*Id.*) He stated that "there will be something stamped on the envelope, and those packages, we don't open." (*Id.* at 5.) If the envelope does not appear to be legal mail, he opens the envelope to check its contents. (*Id.*)

The August 18, 2009 FedEx package was addressed from "Joseph Kosinski, DRAZH & ASSOCIATES, PLLC;" the package contained no other marks identifying it as being sent by an attorney. (Docket no. 85 at 43.) Plaintiff contends that this package was "properly marked as legal mail" and that "[i]t is not the Plaintiff's fault that Gager was not trained at all in regard to the proper handling of legal mail." (Docket no. 85 at 17.) Plaintiff further argues that "if Defendant Gager was not sure of the origin of this FedEx package he should have consulted with proper (sic) trained mail room personnel." (*Id.* at 18.) Defendants assert that the designation "PLLC" could mean any number of professional limited liability corporations under Michigan law, and therefore, nothing on the package indicated that it was legal mail. (Docket no. 83 at 10.) Moreover, Defendants contend, even if Defendant Gager had looked up Joseph Kosinski's name, he was not a licensed attorney who would have shown up in a search of the State Bar of Michigan directory. (*Id.*)

Plaintiff argues that while Michigan law allows for 15 different professions to claim the designation PLLC, "only one can be even remotely related to a prison setting." (Docket no. 85 at 17.) Plaintiff's argument is compelling, and viewing the evidence in a light most favorable to Plaintiff, the Court could conclude that Defendant Gager should have known that the package contained legal mail. But as Defendants note, mere negligent opening of a prisoner's legal mail does not amount to a Constitutional violation. *See Barker v. Sowders*, No. 98-5506, 1999 WL 427170, at *1 (6th Cir. June 15, 1999); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *Hinderliter v. Hungerford*, 814 F. Supp. 66, 68 (D. Kan. 1993); *Bryant v. Winston*, 750 F. Supp. 733, 734 (E.D.

Va. 1990); *Williams v. McClain*, 708 F. Supp. 1086, 1089 (W.D. Mo. 1989). *See generally, Daniels v. Williams*, 474 U.S. 327, 330-33 (1986) (negligence on part of public officials insufficient to state constitutional civil rights claim); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (same). At most, Defendant Gager's actions amounted to negligence. Therefore, Plaintiff's claims against Defendant Gager should be dismissed.

### 3. Plaintiff's claims against Defendants Martinez and Naffziger

Like Plaintiff's claims against Defendant Gager, Plaintiff did not itemize his claims against Defendants Martinez and Naffziger in his Amended Complaint. (*See* docket no. 23.) But in his Response to Defendants' Motion, Plaintiff makes it clear that his claims against Defendants Martinez and Naffziger arise out of the opening of his legal mail on September 8, 2009, and December 21, 2009. (Docket no. 85 at 18-21.) Thus, to the extent that the claims in Plaintiff's Amended Complaint against Defendants Martinez or Naffziger arise out of any act related to the legal mail that he received on August 18, 2009 or June 16, 2010, these claims should dismissed regardless of whether the Court adopts the remainder of this Report and Recommendation.

Plaintiff asserts that Defendants Martinez and Naffziger were the only two employees working in the SLF mail room on September 8, 2009, and December 21, 2009. (Docket no. 85 at 18-21.) Thus, Plaintiff argues, one of them is responsible for opening his legal mail. In support of this contention, Plaintiff points to Defendant Brown's deposition (*see* docket no. 85-1 at 13) and his own declaration regarding the time cards at issue in Plaintiff's Motion to Compel. Assuming, *arguendo*, that Plaintiff is correct and that either Defendant Martinez or Defendant Naffziger opened the legal mail at issue, Defendants testified that the SLF mail room receives hundreds of pieces of mail each day and that the letters are sorted by hand. Plaintiff has not provided any evidence to suggest that the opening of his mail was more than mere negligence. Therefore, as discussed *supra*

with regard to Defendant Gager, Plaintiff's claims against Defendants Martinez and Naffziger should be dismissed.

### 4. Plaintiff's claims against Defendants Evans, Hall, and Brown

Like Plaintiff's other claims, Plaintiff did not itemize his claims against Defendants Evans, Hall, and Brown (*see* docket no. 23), but his Response to Defendants' Motion makes it clear that his claims against Defendants Evans and Hall arise out of the opening of his legal mail on June 16, 2010. (Docket no. 85 at 22-24.) Thus, to the extent that the claims in Plaintiff's Amended Complaint against Defendants Evans, Hall, and Brown arise out of any act related to the legal mail that he received on August 18, 2009, September 8, 2009, or December 21, 2009, these claims should be dismissed regardless of whether the Court adopts the remainder of this Report and Recommendation.

Plaintiff's arguments with regard to Defendants Evans, Hall, and Brown are identical to his arguments with regard to Defendants Martinez and Naffziger. Moreover, with regard to Defendant Evans, Defendants contend that she did not even start working in the SLF mail room until October 17, 2010. (Docket no. 83 at 24.) Therefore, Plaintiff's claims against Defendants Evans, Hall, and Brown should be dismissed.

### 5. Plaintiff's claims against Defendant DeVerney

It is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998). Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v.*

*Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, to state a plausible claim for relief, a plaintiff must allege that each defendant was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Id.*

Defendants argue that "Plaintiff has no viable claim against Defendant DeVerney under § 1983" because Defendant DeVerney did not open any of Plaintiff's legal mail and because he did not encourage or acquiesce in his employees doing so. (Docket no. 83 at 17.) Defendants assert that Defendant DeVerney's only involvement in this matter was during the investigation of the December 21, 2009 mail incident. (*Id.* at 18.) Plaintiff, however, asserts that Defendant DeVerney encouraged his employees to open legal mail by telling them that only mail related to criminal matters was considered "legal mail." In support of this contention, Plaintiff provides the affidavit of a fellow inmate, Ronald King, who heard Defendant DeVerney tell Plaintiff the same. (Docket no. 85-1 at 4.)

Even viewing the evidence in a light most favorable to Plaintiff, the most Plaintiff can prove is that Defendant DeVerney made this statement when meeting with Plaintiff and Mr. King. Plaintiff has provided no evidence to suggest that Defendant DeVerney ever personally trained any mail room employees or that he told the mail room employees to open legal mail related to civil matters. To the contrary, Defendants Gager, Hall, and Brown each testified that they were required to sort and set aside *all* legal mail, assuming it was properly marked, regardless of whether it was related to a civil matter or a criminal matter. (*See* docket no. 83-5 at 4-5, docket no. 85-1 at 18, 19-20, docket no. 85-1 at 11.) And when specifically asked whether she looked for "any indication that the legal mail involves a civil matter," Defendant Brown said, "no." (Docket no. 85-1 at 13.)

Therefore, at most, it appears that Defendant DeVerney was aware that Plaintiff's legal mail was opened and that he may have been mistaken about whether the mail room employees were

allowed to open the mail. But because the mail room employees' negligence does not amount to unconstitutional conduct in which Defendant DeVerney could authorize, approve, or knowingly acquiesce, Plaintiff's claims against Defendant DeVerney should be dismissed.

### 6. Claims for Physical Injury or Emotional Distress

Defendants argue that "[a]ny claim for physical injury and/or mental/emotional distress must be dismissed pursuant to 42 U.S.C. § 1997e(e)." (Docket no. 83 at 34.) But as Defendants note in the opening sentence of their argument, "Plaintiff's Amended Complaint . . . is devoid of any allegations that he has a physical injury." (*Id.*) Likewise, Plaintiff does not contend that he suffered any mental or emotional damages. (*See* docket no. 23.) Thus, Defendant's argument in this regard is moot.

### 7. Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiffs' claims. (Docket no. 83 at 38-39.) Plaintiff argues that Defendants are not entitled to such protection. The Sixth Circuit has set forth a three-step inquiry to determine whether a defendant is entitled to qualified immunity: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff

has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  Therefore, because the Court recommends dismissing Plaintiff's claims on their merits, the Court will not address Defendants' assertion of qualified immunity.

### D.     Conclusion

For the above-stated reasons,  the Court the Court recommends GRANTING Defendants' Motion for Summary Judgment [83].  The Court, therefore, recommends dismissing this matter in its entirety and denying Plaintiff's Motion to Compel, which was included with his Response to Defendants' Motion (*see* docket no. 85 at 26-27) as moot.

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later

than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  October 4, 2013              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Charles Smith and Counsel of Record on this date.

Dated: October 4, 2013               s/ Lisa C. Bartlett
                                     Case Manager